In the Matter of PAUL POMILIO, Petitioner, v. VITO S. LEE, as Superintendent of Oneida County Hospital, Respondent.

Fourth Department, June 11, 1964.

*Howard D. Seld* for appellant.

*Richard A. Frye, County Attorney (William J. Halpin* of counsel), for respondent.

*Per Curiam.* In this proceeding to review the dismissal of a civil service employee we find no substantial evidence (CPLR 7803, subd. 4) to support the decision of respondent finding petitioner guilty of specification 1 of charge I; specifications 1 and 2 of charge II; specifications 2 and 3 of charge III; specifications 2 and 3 of charge IV; and specification 1 of charge VI.

Charges I and II and the specifications thereunder center upon alleged violations of sections 6804 and 6805 of the Education Law. The proof is that petitioner, who was the pharmacist in a county hospital, on the day in question removed from the wall of a room in the hospital the pharmacy license and his license as a pharmacist. There is no proof that these were removed from the hospital but to the contrary they were found a few days later in a cupboard in the pharmacy. The specifications under charge II fall in the absence of proof that business was conducted in the pharmacy without the conspicuous display of the licenses. Subdivisions 1 and 2 of section 6805 of the Education Law, fairly construed, require the display of such licenses when a pharmacy is open for business. Indeed, it is open to question whether the hospital required a pharmacy license. (Cf. 1901 Report of Atty. Gen. 156.) In any event there is not a scintilla of evidence that petitioner as a "practicing pharmacist" failed to display conspicuously his license or that he practiced his profession in a place where a pharmacy license was not displayed.

Petitioner was found guilty (charge III, specification 2) in that from October, 1962 to the date of suspension, May 17, 1963, he failed to make a perpetual inventory as directed by respondent. The making of such an inventory was the subject of considerable correspondence and conversations between petitioner and respondent. The total lack of substance to the charge is established by a memorandum from respondent to petitioner dated May 13, 1963 (four days before petitioner's suspension) in which the Superintendent wrote that "All materials and files to set up the perpetual inventory are now in your department; therefore, it should be completed by June 15, 1963."

Petitioner was found guilty of removing an inventory report from the hospital without permission of respondent (charge III, specification 3). The latter to substantiate this charge directed attention during his testimony to two written rules of the hospital. One provided that "outgoing correspondence relating to the hospital must have the prior approval of the superintendent." The second provided that "inquiries from the press, radio, TV or other sources shall be directed to the superintendent only." The only proof is that petitioner took the inventory to the courthouse and showed it to some unnamed person. Respondent in prosecuting the charges contended that this constituted a violation of one or both of the quoted rules. We find no evidence of substance to sustain this determination.

One of the specifications under the fourth charge of which petitioner was found guilty was that in his 1962 annual report he accused "the nursing staff of drug pilferage and wrong practices." The regulations of the hospital mandated the submission to the Superintendent of an annual report by each department head. In his 1962 report petitioner recommended institution of a control system for dispensing drugs and medications. In the course thereof he wrote that "there is thought to be pilferage regarding sedatives and barbiturates, which are ordered in large quantities by the floors." Respondent testified that he "assumed" that petitioner was accusing the charge nurses of pilferage as they had charge of dispensing the drugs. The document presumably was a confidential report to the Superintendent. We find no such innuendoes as respondent would read into the report. To the contrary it would seem that suggestions for the tight control within the hospital of barbiturates and sedatives would have been welcomed.

Another specification of the fourth charge of which petitioner was found guilty charged misconduct in that he advised coemployees as they entered the hospital that they were being recorded as late. We find no proof to substantiate this charge. Petitioner on cross-examination admitted that he wrote down the names of tardy employees but denied telling them he was so doing. Respondent, however, submitted no proof on the subject.

The only sustained specification under the sixth charge accused petitioner of receiving prescriptions and delivering drugs to a coemployee "while on hospital grounds." There is no claim that such drugs came from the hospital pharmacy. The proof was that on three occasions petitioner as a favor to a fellow employee obtained a drug sold under a trade name from an outside pharmacy for which the coemployee paid. There was no proof that a prescription was required to obtain the drug. The

testimony of petitioner stands uncontradicted that the same procedure was followed in obtaining drugs for a member of respondent's family.

In summary we find no substantial evidence to support the findings as to the eight discussed specifications. We find such proof as to specification 1 of charge III and specification 1 of charge IV. The first specification charged insubordination in refusing to answer questions at an investigatory hearing conducted by respondent. The proof is that there was refusal to answer two questions. The subject matter of the questions was relevant to the investigation and petitioner presented no adequate reason for his refusal to answer. The other specification charged petitioner with calling a coemployee an offensive name. While there may have been extenuating circumstances the proof is clear that the name was called.

Lastly, we consider the question of punishment which we are authorized to review and upon a finding of abuse of discretion to fix a new lower penalty. (CPLR 7803, subd. 3; *Matter of Mitthauer* v. *Patterson*, 8 N Y 2d 37.) The two charges that we have found to be sustained by substantial evidence do not warrant the drastic punishment of dismissal which upon the entire record we find to be an abuse of discretion.

The determination should be modified by annuling so much thereof as (1) found petitioner guilty of specification 1 of charge I; specifications 1 and 2 of charge II; specifications 2 and 3 of charge III; specifications 2 and 3 of charge IV; and specification 1 of charge VI and (2) directed dismissal of petitioner. We reduce the punishment to suspension for a period of 15 days commencing from May 17, 1963 and, as so modified, the determination is confirmed, with costs to petitioner.

WILLIAMS, P. J., BASTOW, HENRY, NOONAN and DEL VECCHIO, JJ., concur.

Determination unanimously modified on the law and in the exercise of discretion in accordance with the opinion, and, as so modified, confirmed, with costs to petitioner.